**HEATHMAN et al. v. SINGLETARY, County Judge, et al. (No. 940—5048.)**

Commission of Appeals of Texas, Section B. Jan. 2, 1929.

J. S. Bracewell, of Houston, and M. E. Gates, of Huntsville, for plaintiffs in error.

Jos. F. Henson, Co. Atty., and Dean & Humphrey, of Huntsville, for defendants in error.

SHORT, P. J. The plaintiffs in error, as qualified voters and property taxpayers of Walker county, Tex., suing for themselves and all those similarly situated, on the 15th day of June, 1927, procured from Hon. Carl T. Harper, Judge of the Twelfth Judicial District of Texas, a judgment against the defendants in error, Walker county and the commissioners' court of Walker county, restraining them from appropriating and expending any part of the money derived from the proceeds of the sale of certain bonds issued by Walker county, towards the construction of a certain line of roadway in Walker county, the initial beginning point of which, towards the north, is the point designated as Riverside and the ending at Huntsville on the south. From this judgment the defendants in error prosecuted an appeal to the Court of Civil Appeals at Galveston where a hearing was had and judgment rendered by that court reversing the judgment of the district court and rendering it in favor of the defendants in error, the appellants in that court. 300 S. W. 242.

The Court of Civil Appeals in its opinion concludes that, under other undisputed facts, the facts found by the trial judge are not ma-

terial to the decision of the case. The Court of Civil Appeals finds the following facts to be material:

1. That prior to February 15, 1924, state highway No. 19, extending across Texas from Paris to Galveston, through Walker county, via both towns of Riverside and Huntsville, had been a federal aided state highway in the 7 per centum class, pursuant to the Federal Highway Act of November 9, 1921, and had been designated and accepted by the Federal Bureau of Roads as one among the highways to be laid out and improved as a primary road through the state.

2. That the proceeds of the sale of the bonds, issued in response to the result of the election in Walker county and in part involved in this suit, were duly divided into three parcels, one of which not to exceed $400,000, should be spent in retiring the outstanding indebtedness of the road districts of Walker county, and another, to be not less than $100,000, should be expended upon roads other than state highways in Walker county, while the remaining parcel, a sum not to exceed $1,000,000, should be spent on the state highways in Walker county, among which last was federal aided state highway No. 19, running through the county from Riverside on the north to Huntsville, thence south to the Montgomery line.

3. That there were two routes by which state highway No. 19 might connect the controlled points of Riverside and Huntsville, one by way of Cline's Prairie, the other by Ryan's Ferry. That the order made by the commissioners' court of Walker county April 25, 1927, of which plaintiffs in error complained in their petition filed with the district judge, was made in obedience to the direction and orders of the state highway commission and was entered to meet the conditions imposed upon Walker county, to enable the county to get the benefits of aid from the federal government in the construction of that part of state highway No. 19 in Walker county between Riverside and Huntsville.

4. That state highway No. 19, through Walker county, was a federal aided state highway project at the inception of the move to raise the funds involved in this lawsuit, and that the Federal Bureau has, at all times, refused to approve the location from Riverside to Huntsville, by way of Cline's Prairie, but on the contrary has consistently been willing to approve its location by way of Ryan's Ferry, and likewise the state highway engineer, himself, has refused to approve the plans and specifications for the construction of the highway by way of Cline's Prairie.

5. That not even a scintilla of evidence was offered which had a tendency to question the good faith of the defendants in error, nor for that matter of any official involved or mentioned in this lawsuit. That on April 25,

1927, at a regular meeting of the state highway commission, after full notice to all interested parties and a hearing at which they were all represented, it made its order of that date, relocating that part of state highway No. 19 between Riverside and Huntsville by way of Ryan's Ferry.

6. That the order for the election to determine whether the bonds should be issued did not designate the Cline's Prairie route, or any points of control, so as to indicate that state highway No. 19 was to be constructed by way of Cline's Prairie, and that without such specification in said order, or some other order made prior to the election, the plaintiffs in error occupying the position stated in their complaint had not established any facts which enabled them to exercise control over any part of the proceeds of said bonds in opposition to the duly entered orders of the state highway commission, with relation thereto. Basing its conclusions of law upon the facts found, the Court of Civil Appeals declared that the order made by the district judge of Walker county, restraining the defendants in error from using any part of the proceeds of the sale of the bonds, on the state highway by the way of Ryan's Ferry from Riverside to Huntsville in Walker county, had been improvidently made in that it restrained the defendants in error from doing the only thing which they had the discretion to do, under the circumstances, and that the order so made, in addition to being improvident, was an abortive one, in that it could have no effect upon either the highway commission or the Federal Bureau of Roads, neither of whom is a party to the action:

The plaintiffs in error having presented to the Court of Civil Appeals their motion for rehearing and it having been overruled, they made application to the Supreme Court for writ of error, which was granted because of the importance of the question involved.

The Act of July 29, 1876 (Laws 1876, c. 64) declared all the roads and highways, which had theretofore been laid out and established agreeable to law, except such as had been discontinued, to be public roads. Thereafter by the act of the Legislature of 1889 (page 21) the commissioners' courts of the several counties were given full powers to lay out and open public roads and to discontinue or alter any road whenever it shall be deemed expedient, under certain restrictions named in said Act. This general policy, evidenced by these and other acts of the Legislature, continued in effect until the 1st day of January, 1924. However, the Legislature did, in 1917 (Acts 1917, c. 190) create the state highway commission, but it did not give this commission any exclusive powers, nor did it create, by its terms, a connected system of state highways. It did not clothe the state highway department with authority to enable that body to act with other than in an advisory

capacity to the various commissioners' courts of the state, who continued to have exclusive control of public roads and highways in their respective counties. Finally the Legislature passed an act in 1923 at its regular session (Acts 1923, p. 161), and afterwards amended that act at the second called session (Acts 2d C. S. 1923, p. 71) creating the state highway department, by, the terms of which that department was fully and completely vested with administrative control of all public roads which might be a part of the state highway system, and the effect of which was to take away from the commissioners' courts all power, authority, and jurisdiction with respect to the designation, location, relocation, improvement, construction, abandonment or discontinuance and control over such of the public roads as were then recognized as a part of the state highway system, and over such of the public roads of the state as might thereafter, by exercise of the rather plenary powers vested in the state highway department, by said act, become a part of the state highway system. The present statutes, as codified in 1925, are designated as "Title No. 116." The first article of this title, 6663, declares that the administrative control of the state highway department shall be vested in the state highway engineer. Article 6673 provides that: "The Commission is authorized to take over and maintain the various State Highways in Texas." Article 6674a (added by Acts 39th Leg. c. 186, § 1) provides that: "The term 'highway' as used in this Act shall include any public road or thoroughfare or section thereof and any bridge, culvert or other necessary structure appertaining thereto. The term 'improvement' shall include construction, reconstruction or maintenance, or partial construction, reconstruction or maintenance and the making of all necessary plans and surveys preliminary thereto." Article 6674b (added by Acts 39th Leg. c. 186, § 2) provides that: "All highways in this State included in the plan providing a system of State highways as prepared by the State Highway Engineer in accordance with section 11 of chapter 190 of the General Laws of the Regular Session of the Thirty-Fifth Legislature are hereby designated as the 'State Highway System.'" Article 6674c (added by Acts 39th Leg. c. 186, § 3) provides that: "The Commissioners' Court of each county in the State is hereby authorized to aid the construction and maintenance of any section or sections of a macadamized, graveled or paved road or turnpike in said county constituting a part of the State Highway System and to enter into contracts or agreements with the State Highway Department for that purpose. Any moneys in the available road fund of the county or any political subdivision or defined district thereof may be appropriated for the purpose of granting such aid, hereinafter designated as 'county aid.'" In the meantime, the federal government enacted what is termed the Federal Highway Act which became effective November 9, 1921. This act prescribes a method of co-operation between the federal bureau of roads, provided for therein, and the state highway departments in the location and construction of highways toward which federal aid is granted.

The Legislature of this state did not do that which was necessary to be done in order to receive the aid provided by the Federal Highway Act until the regular session of the Thirty-Ninth Legislature passed an act with respect to the improvement of federal aided state highways, among other things it being provided in what is now article 6674d of the Revised Statutes of 1925 (added by 39th Leg. c. 186, § 4) the following:

"All further improvement of said State Highway System with Federal aid shall be made under the exclusive and direct control of the State Highway Department and with appropriations made by the Legislature out of the State Highway Fund. The further improvement of said system without Federal aid may be made by the State Highway Department either with or without county aid. Surveys, plans, specifications and estimates for all further improvement of said system with Federal aid or with Federal and State aid shall be made and prepared by the State Highway Department. No further improvement of said system shall be made under the direct control of the Commissioners' Court of any county unless and until the plans and specifications for said improvement have been approved by the State Highway Engineer."

And in this connection it is well to remember the fact found by the Court of Civil Appeals, that previous to the election, at which the bonds sold in this case were voted, that state highway No. 19 was a federal aided state highway in the 7 per centum class, which highway was to be constructed from Riverside to Huntsville, and that $1,000,000 of the proceeds of the bonds were to be used in co-operation with the state and federal authorities, so as to obtain the state and federal aid in the construction of state and federal highways passing through Walker county among which is state highway No. 19. One of the requirements of the law in force at that time, with reference to this subject, is that to obtain federal aid on any particular location of a state highway the location must be approved by the Federal Bureau of Roads. Quisenberry v. Mitchell, 116 Tex. 378, 292 S. W. 160. It is also well to remember in this connection that no control points for the state highway No. 19, through Walker county, were fixed by the commissioners' court of Walker county in the order for the bond election or in any other order made prior thereto. The only control points for said state highway No. 19, as fixed by the state highway com-

mission and the Federal Bureau of Roads, prior to the bond election, were Riverside on the north, Huntsville in the center, and points to the south as far as Galveston. Article 6674i of the Revised Civil Statutes of 1925 (added by Acts 39th Leg. c. 186, § 9) provides that: "The State Highway Department shall have the right to reject any and all such bids. [Referring to bids of contractors for which the law provided.] All such bids shall be sealed, and filed with the State Highway Engineer, at Austin, Texas, and shall be opened at a public hearing of the State Highway Commission. All bidders may attend and all bids * * * shall be filed with the county in which the work is to be performed."

█ █ We have cited the article last quoted, not that it has any reference to this case, but to emphasize the fact that the plaintiffs in error have not established any such relation to the fund in question as gave them a personal interest in it, and also to emphasize the further fact that whatever was done, according to the record in this case, with reference to the voting, issuing, and sale of the bonds and whatever was done with reference to the designation and location of the route by Cline's Prairie from Riverside to Huntsville, and whatever was done with reference to the designation and location of the route between these two points by way of Ryan's Ferry, as well as whatever was done with reference to building a bridge across Harmon's creek and the contracting of approaches thereto, were each and all governmental acts done in good faith by agents of the government, within the scope of their several duties as such. Being governmental acts, and being untainted by fraud and unassailed on account of any accident or mistake occurring in their performance, they are valid. They cannot be assailed by any private citizen under such circumstances, unless and until the citizen has pleaded and proven a condition of affairs demonstrating that he has a personal interest in the subject-matter relating to a transaction between himself as such private citizen upon the one hand and the government on the other. Had the plaintiffs in error pleaded and proved that the order, providing for the bond election, specified that the moneys should be expended on a highway between Riverside and Huntsville by way of Cline's Prairie, and that these moneys were about to be so used on another route as would deprive them of a similar highway by way of Cline's Prairie, they would have been entitled to the relief for which they prayed, and which the district judge granted. Likewise the route by Cline's Prairie would have been fixed under the law if the plaintiffs in error, in the capacity of bidders for the construction of the work, had been denied a right, guaranteed to them, under the provisions of the law, to construct the road by Cline's Prairie rather than by Ryan's Ferry, for the reason that the acceptance of bids. duly presented, for the work to be done, according to certain specifications, would have given contractors a vested right to perform the work on the identical ground mentioned in the specifications. But nothing of this kind appears in the record.

█ The state highway department is an administrative tribunal, and any order made by it, having for its purpose the location of a state highway, is subject to revocation or change until something has been done, such as the making of an actual contract for the construction of a highway, or the doing of some other similar work, which has the effect of giving a vested right to some one. In the case of Robbins v. Limestone County, 114 Tex. 345, 268 S. W. 915, which involved the construction of the act of March 14, 1923, transferring to the state highway commission the control of the public roads of the state, it is held that such public roads belong to the state, and not to the counties. In that case it is also held that the establishment of public highways is a function of government belonging to the state and that the Legislature may exercise control of them, through such agencies as it may designate, in the absence of constitutional restrictions. It is further held that the Legislature has full control of the property held by the county, as an agent of the state, and may exercise dominion and control over it without the consent of the county, and without compensating the county for it, in the absence of constitutional restrictions. It is further held that the commissioners' courts of the state never exercise any jurisdiction over the highways except by virtue of the laws of the state, as enacted by the Legislature, and that since article 5, sec. 18, of the Constitution, conferring on the county commissioners jurisdiction over all county business, does not, in terms, confer on that body power over county roads, the Legislature has the authority to take away the jurisdiction once conferred upon commissioners' courts over public highways of the state and transfer it to another agency.

█ This the law has done as to state highways, and that agency having acted in good faith, within the scope of its authority in relocating state highway No. 19 between Riverside and Huntsville, we are of the opinion that the judgment of the Court of Civil Appeals has correctly declared the law of the case. Quisenberry v. Mitchell, 116 Tex. 378, 292 S. W. 160; Robbins v. Limestone County, 114 Tex. 345, 268 S. W. 915; Cannon v. McComb (Tex. Civ. App.) 268 S. W. 999; Grayson County v. Harrell (Tex. Civ. App.) 202 S. W. 160; Board of Road Com'rs of Hunt County v. Johnson (Tex. Civ. App.) 231 S. W. 859; Delta County v. Blackburn, 100 Tex. 51, 93 S. W. 419; City of Victoria v. Victoria County, 100 Tex. 438, 101 S. W. 190; Travis County v. Trogdon, 88 Tex. 302, 31 S. W. 358; General Laws, Regular Session 38th Legisla-

ture, page 161; General Laws, Second Called Session 38th Legislature, page 71; General Laws, 39th Legislature, p. 456; Title 116, Revised Statutes 1925; U. S. Compiled Statutes, Supp. 1923, § 7477¼ et seq. (Highway Act) (23 USCA §§ 1–25).

We therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.