## C. E. FLETCHER ET AL. v. W. B. HOWARD ET AL.

No. 5725.   Decided April 15, 1931.

(39 S. W., 2d Series, 32.)

*Vickers & Campbell,* for appellants.

*Robt. Lee Bobbitt,* formerly Atty. Gen., *W. Dewey Lawrence,* formerly Asst. Atty. Gen., and *W. B. Howard,* for appellees.

MR. PRESIDING COMMISSIONER SHORT delivered the opinion of the court.

The plaintiffs in error, qualified voters and property tax payers in Childress county, suing for themselves and those similarly situated, by their application filed in the district court of Childress county, asked for a temporary injunction restraining the defendants in error, as members of the commissioners' court of Childress county, and as members of the state highway commission, respectively, and the chief engineer of said commission from diverting the proceeds of certain bonds issued and sold, from being used on a certain public road.   Upon a hearing of this application, the same was denied, and the petition was held to be insufficient to state a cause of action on general demurrer.   The plaintiffs in error having declined to amend their petition, the suit was dismissed, whereupon an appeal was taken to the Court of Civil Appeals at Amarillo, where the judgment of the district court was affirmed.   26 S. W. (2d) 444.   The case has reached the Supreme Court in the usual way.

It appears from the allegations in the petition, as well as from the facts, which the Court of Civil Appeals finds to have been alleged therein, that on December 21, 1927, there had existed for several years a public way through Childress county which had been laid out as a public road by the commissioners' court and as such maintained, and recognized as a state highway by the highway commission, and which had been known, used and recognized by the people of Childress county as Highway No.

4, the general direction being north and south, said highway traversing the territorial limits of the town of Childress, the county seat of the county. There was also on said date a similar public way extending east and west through the county and through certain towns in the county, which was designated as Highway No. 5. However, Highway No. 5 is not involved in this law suit. On the date mentioned the voters of Childress county, by virtue of an election duly called, authorized the issuance of bonds in the sum of $650,000 to provide for the construction, maintenance and operation of macadamized, or paved roads, or turn pikes, and in aid thereof. These bonds were sold thereafter and the proceeds were put in the treasury of Childress county. Before this election, the question arose among the voters as to what particular roads were to be constructed and maintained with the proceeds of these bonds. The commissioners' court, in view of the agitation of this question, made and entered upon its minutes an order to the effect that, in the event the bonds were voted, to the amount of $650,000, for the purposes above mentioned, that the proceeds from the sale thereof should be used for the specific purpose, among others, for the construction of a concrete road, or its equivalent, or a higher grade of material, over the entire length of State Highway No. 4 in Childress county. When the proceeds of the bonds became available the state highway commission, through its engineer, re-located a highway which it called State Highway No. 4, beginning at a point on the original Highway No. 4 to the south of the town of Childress, running in a northerly direction to the county line, which designated way left the town of Childress about two miles to the east and proceeded to the northern boundary, the two ways being on an average two miles apart, and it is alleged the defendants in error proposed to use the proceeds of these bonds in constructing and maintaining this new road, called Highway No. 4, and not to use any part of it as the order of the commissioners' court declared it should be so used, on that part of the original Highway No. 4, beginning to the south of the town of· Childress and leading from said point by way of the town of Childress, along said original highway to the county line to the north. There were other allegations in the petition to the effect that the new public road, proposed to be constructed, was through an uninhabited, rough and undesirable country, while the original Highway No. 4 had been constructed and maintained through an inhabited and fertile country. It is also alleged that the original Highway No. 4 led to a public bridge on Red river, while the proposed new route would require the construction of another bridge at another point on said river.

It is the contention of the defendants in error that they are justified in using the proceeds of these bonds on the newly designated Highway No. 4 for the reason that the order of the commissioners' court, in designating State Highway No. 4, only used two control points, which are

the south and north boundary lines of Childress county, and that they, the defendants in error, under the law had the authority to use the proceeds of these bonds on any route they saw proper, provided only this route extended through the county from the southern boundary line to the northern boundary line.

· Upon the other hand it is the contention of the plaintiffs in error that the language of the order, which is copied in the opinion of the Court of Civil Appeals is susceptible of only one construction, in view of the facts alleged in the petition, and that this construction confined the location of Highway No. 4 substantially to its location as it existed on the date of the election and as it had existed for many years previous thereto.

It also seems to be the contention of the defendants in error that the commissioners' court had no power or authority to enter into the agreement with the voters, as plead by the plaintiffs in error.

In discussing article 3, section 52 of the Constitution, as well as article 8, section 9, the Supreme Court of this state, speaking through Associate Justice Pierson in Robbins v. Limestone County, 114 Texas, 345, 268 S. W., 915, 919, among other things said: "Of course, these funds * * * may not be diverted to other purposes than those for which they were voted." By article 2351, R. S., 1925, commissioners' courts are authorized, among other things, to lay out and establish public roads when they deem it necessary, as well as to exercise the general control over public roads in their respective counties. Article 2352 authorizes commissioners' courts to levy and collect taxes for road purposes, and this right to levy and collect taxes carries with it the right to expend the fund when so collected, to carry out the purposes for which it was collected. In Black v. Strength, 112 Texas, 188, 246 S. W., 79, 80, the Supreme Court, in speaking of a similar agreement, evidenced by the order under discussion made by the commissioners' court, held that commissioners' courts have the power and authority to enter into an agreement respecting the application of the proceeds of the bonds, and that such an agreement "could not be arbitrarily ignored or repudiated without involving the perpetration of a fraud or its equivalent on the voters," and further: "that the will of those having to bear the bond burden should not be defeated by a mere change of mind on the part of the members of the commissioners' court with respect to the particular roads needing improvement." In Moore v. Coffman, 109 Texas, 93; 200 S. W., 374, wherein the commissioners' court agreed with the voters to erect a bridge across a river at a designated crossing, the Supreme Court held that such bridge must be constructed out of the bond money at the crossing mentioned and designated in the election order, giving as a reason that it was a solemn contract to so construct the bridge with the money. In Heathman v. Singletary, 12 S. W. (2d) 150, 153, wherein this section of the Commis-

sion of Appeals, in a case where the highway commission was alleged to be diverting the bond money on a road other than Highway No. 19, said: "Had the plaintiffs in error pleaded and proved that the order, providing for the bond election, specified that the moneys should be expended on a highway between Riverside and Huntsville by way of Cline's Prairie, and that these moneys were about to be so used on another route as would deprive them of a similar highway by way of Cline's Prairie, they would have been entitled to the relief for which they prayed." In Quiesenberry v. Mitchell, 116 Texas, 378, 292 S. W., 160, 163, wherein the controversy arose respecting the application of money to build a road from Seymour to Westover, Section A of the Commission of Appeals, among other things, said: "It must be held that, since the order of election designated the court house of Seymour and the town of Westover as controlling points for such proposed road, the fixing of such definite and specific places as points to be reached by such a road will be given effect and a portion of the bond money must be applied to the construction and improvement of a road between those two places." In Grayson County v. Harrell (Texas Civ. App.), 202 S. W., 160, wherein the court, in speaking of the duty of the courts to enforce contracts of the kind and character in question, the court said: "It would be dangerous to hold that the commissioners' court could recite in its order for the election one purpose or proposition, and by some other action or order, not made a part thereof, and not referred to in the official notices of the election, inject into the proposition limitations or conditions so that the actual results of the election would be to carry a different proposition from that actually voted on according to the official record." In Wright v. Allen, 257 S. W., 980, 985, the Court of Civil Appeals had this to say on the question: "The pre-election orders entered by the commissioners' court of Dallas county in reference to said bond election must be treated as a contract between the commissioners' court and the electorate entitled to vote at said election not that the commissioners composing said court did not have the right to use their discretion vested in them by law in reference to the place of construction, manner of construction and the cost thereof, but they had exercised it in the making of said orders, and, the election having been held in pursuance thereof, the electors thereat, being vitally interested not only in the voting for the issuance of the bonds but in the construction of the road system, are entitled to be protected in the carrying out of the contract thus made in the forms of the orders entered."

The opinion in Heathman v. Singletary, supra, is authority for the proposition that the act of the state highway commission, in re-locating a state highway after a bond election, is a governmental one, and being untainted by fraud, and unassailed by any accident or mistake, occurring in their performance, is valid, as well as for the proposition that the valid governmental act of the state highway commission in re-locating a state

highway after a bond election, cannot be assailed by a private citizen without pleading and proving a condition of affairs demonstrating he has a personal interest in the subject matter relating to the transaction between himself and such private citizen, on the one hand, and the government on the other. But neither of these propositions is involved in this litigation. The plaintiffs in error do not attempt to have the act of the state highway commission, in locating the highway as it did, annulled, as indeed they could not do, since the state highway commission had the authority, under the law as it now exists, to locate a state highway wherever, in the exercise of its sound discretion, it sees proper. The plaintiffs in error merely contend that neither the state highway commission, nor the commissioners' court, under the alleged facts of this case, have the authority to divert the proceeds from the sale of the bonds from being expended on Highway No. 4, as it existed on the date of the election, where it appears that no part of said proceeds were intended to be so used. It appears, from the allegations in the petition, that the state highway commission and the commissioners' court intend to use all of the proceeds from the sale of the bonds, which the voters intended should be used on Highway No. 4, as it existed on the date of the election, for the construction and maintenance of the new highway established by the state highway commission, the effect of which is to deprive the plaintiffs in error of the right which they acquired by virtue of the order made by the commissioners' court to have the proceeds of these bonds used on Highway No. 4, as it existed when the agreement was made, and the election held.

It necessarily results from the conclusions we have reached that the judgments of the Court of Civil Appeals and that of the district court, in sustaining a general demurrer to the petition, and in refusing to order issued a temporary injunction, for which the petition prays, was error, necessitating a reversal of said judgments and a remanding of the case for trial on its merits. The application for the issuance of a temporary writ of injunction is duly authenticated and therefore the judge of the district court of Childress county is directed to grant the prayer of the plaintiffs in error, for the issuance of said writ, fixing the amount of the bond in such sum as he concludes to be sufficient, and to order the issuance of said temporary writ of injunction upon the filing of said bond duly approved, in accordance with the prayer in the petition of the plaintiffs in error, to continue in force until a final judgment shall have been rendered in the case, when said writ shall either be dissolved, in whole or in part, or perpetuated, in whole or in part, according to the result of the trial on the merits of the case. The judgments of the Court of Civil Appeals and of the district court are reversed, and the cause is remanded with the above instructions.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. Cureton, Chief Justice.

ON REHEARING.

The attorney general of the state has filed a motion for rehearing on behalf of the defendants in error in this case. We have given this motion careful consideration and believing that the original opinion is correct we overrule the motion.

However, in view of the serious contention made that a certain portion, which we have underscored, of a certain paragraph in the opinion, restrains the highway commission of the state of Texas from locating and designating state highways within this state, which, of course, the Supreme Court could not do, and which another portion of the opinion expressly declares, we deem it proper to say that the language emphasized was used in view of the issues made by the pleadings, having reference only to the location of the original highway No. 4, and having no reference whatever to the new highway No. 4, as located and designated by the state highway commission. This paragraph, a portion of the language of which we have underscored, is as follows:

" 'The defendants who compose the Highway Commission likewise be restrained from appropriating any part of said proceeds towards the building and paving of any other roads than said highways Nos. 4 and 5 as they exist and did exist on and prior to December 21, 1927; further, *that they be restrained from changing the location of said highway No. 4 as it is and was designated and used on and prior to December 21, 1927.'* "