

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 28, 1949.

Hon. Max E. Ramsey
County Attorney
Andrews County
Andrews, Texas

Opinion No. V-780.

Re: The legality of the pro-
posed expenditure of road
bond funds as it relates
to the bond election or-
der.

Dear Mr. Ramsey:

Your request for an opinion is substantially
as follows:

"In March, 1948, there was held in An-
drews County a bond election for the purpose
of determining whether or not bonds should
be issued in the amount of $260,000.00 for
road purposes. In the official ballot the
proposal was stated in the following manner:

"'FOR the issuance of $260,000.00
bonds and the levying of the taxes in
payment thereof; the proceeds to be
expended on approximately twenty miles
of road from Andrews to the Dawson
County line, in a northeasterly direc-
tion toward Lamesa.'

"The result of this election was favor-
able and in furtherance of these plans a con-
tract was entered into between Andrews County
and the State of Texas for the construction
of the road. It was subsequently proposed
that this road be constructed from a point
two miles east of the town of Andrews and go-
ing in a northeasterly direction to a point
on the east boundary line of Andrews County,
approximately six or seven miles south of the
corner of Dawson County, the same being the
boundary line between Andrews County and Mar-
tin County.

"It was originally the intention that a road be built from Andrews to Lamesa by the most direct route possible. At the time the Commissioners' Court ordered the election it was insisted by interested citizens in the County that the location be specifically designated and for that reason the insertion was made; 'to the Dawson County line.' Prior to the election and also prior to the time the petition was circulated the Commissioners' Court being composed of different individuals than that Court which ordered the election, had a survey made from Andrews in as direct a route as possible to the extreme northeast corner of the county. It would seem that the intentions were rather clearly explained by these actions but it was generally thought that the road would go as shown on the attached sketch of my letter.

"The question now arises as to the authority of the Commissioners' Court in Andrews County in building this road from a point two miles east of Andrews to the Martin County line to a point seven or eight miles south of the northeast corner of Andrews County."

In an opinion numbered 0-6973 dated December 12, 1945, rendered in a prior administration, this office stated:

"It has repeatedly been held by the Appellate Courts of this State that when a county commissioners' court enters a pre-election order designating the road and specifically declaring the purpose for which the bond money is to be expended, said commissioners' court, or subsequent commissioners' courts, cannot change the designation of such road or expend the money for any other purpose than that specifically designated in the pre-election order. Black v. Strength, 246 S. W. 79, Fletcher v. Ely, 53 S. W. (2d) 817, error refused, Moore v. Kaufman, 200 S. W. 374. Any other rule would tend to undermine public confidence in the acts of public officers. See also Golden Gate Bridge

and Highway District v. Filmer, 21 Pac. (2d)
112, Perry v. Los Angeles, 203 Pac. 992."

In an opinion numbered O-4078 dated October
15, 1941, rendered in a prior administration, this of-
fice stated:

"The purposes for which the proceeds of
the bonds were to be used being a part of the
election proceedings would require that the
funds derived from said bonds be used only in
accordance therewith. In the case of Moore
v. Coffman, 200 S. W. 374, the general rule
is laid down by the Supreme Court and is sub-
stantially that if the purpose for issuing
bonds is specifically stated in the petition,
order and notice of election, the voters have
the right to rely on such statement and the
use of such bond funds otherwise would be pro-
hibited by law. Such a statement becomes a
part of an implied contract entered into be-
tween the voters and the authorities entrust-
ed with the expenditure of such funds."

Inasmuch as the question presented is a fac-
tual one, it resolves itself into the proposition of
whether the proposed change in the road from Andrews to
Lamesa is in substantial compliance with the will of
the voters as expressed in the bond election. While it
is true that the law does not require a literal per-
formance, nevertheless it is our opinion that there is
such a material change in the proposed route from that
designated in the bond election order that it would not
be in substantial compliance. It is to be noted that
the original route was from Andrews to the Dawson Coun-
ty line whereas the proposed change would in no wise
touch the Dawson County line but on the contrary would
be to the Martin County line.

In the case of Fletcher v. Ely, 53 S. W.(2d)
817, the Court stated:

"That, in the absence of a definite
identification of the specific road to be
paved, a discretion exists in the commission-
ers' court as to which of two or more routes
may be followed between control points named
in the pre-election orders, which discretion,
however, may be and is surrendered when in

response to a referendum, under a proper order of submission, the particular route and road to be paved is identified and named. . . .

"That, when the voters thus speak the proceeds of the bond issue are 'earmarked' with the character of a trust fund which may not be diverted to another purpose or project, and any such attempt will be enjoined by a court of equity. The result thus obtained has been referred to as having the binding effect and force of a contract. Black v. Strength, 112 Tex. 188, 246 S. W. 79; 19 R. C. L. pp 1163, 1164; Roane County Court v. O'Brien, 95 W. Va. 32, 122 S. E. 352, 355."

By virtue of the foregoing authority and the opinions heretofore rendered, it is our opinion that the proposed change is not in substantial compliance with the will of the voters previously expressed.

### SUMMARY

Where the electorate has voted bonds to raise money to be expended on a particular road, the route designated must substantially comply with the route specified in the bond proceedings.

The proposed routing of the road in question is not in substantial compliance with the will of the voters previously expressed.

Very truly yours,

APPROVED

ATTORNEY GENERAL OF TEXAS

FIRST ASSISTANT
ATTORNEY GENERAL

By Burnell Waldrep
Assistant

BW:bh